UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BILLIE ALLEN
'
         Petitioner

vs

WARDEN T,J.,WATSON, (FCC Terre Haute)
         Respondent.

**FILED**

DEC  9 2019

**U.S. CLERK'S OFFICE**
**INDIANAPOLIS, INDIANA**

2:16. CV-257. JMS MJD

TO Hon. Jane Magnus-Stinson, Judge

INJUNCTION: ASKING FOR THIS COURT'S AID AND ASSISTANCE IN PREVENTING
THE WARDEN FROM DENYING ME, PETITIONER ALLEN, ACCESS TO THE LAW
LIBRARY AND OTHER LEGAL AVENUES, WHICH WOULD PREVENT ME FROM PROPERLY
RESPONDING TO A PRO SE PETITION, PENDING IN THE SUPREME COURT

This matter comes before this Court on petitioner Billie Allen's motion, asking for this Court's assistance to put forth an injunction, which would prevent the Warden from denying me, Billie allen, access to the law library, and other legal avenues, which would prevent me from properly responding to a "pro se' petition, currently pending in the United States Supreme Court.

## I. Background

On December 5th, 2019, the Warden would inform, both the staff and prisoners in the Special confinement Unit (SCU), that due to the up and coming executions, scheduled to take place, December 9th, December 11th, and december 13th, that he would put the entire unit on lockdown. When I would bring it to the attention of the Warden, and the Unit Manager, that i had an appeal pending in the Supreme Court, and that i would need time to go to the law library to do research, type my response, and make copies of what I'd file to the court. (Because any and all responses must be submitted to the other side). I was told that my attorneys had to contact the prison. But even after explaining that I have no counsel on my pending petition. i was simply told, "I don!t know what to say about that."

As the Court can see from the attachment, (Motion from the government seeking its 5th extension), that they requested to have until december 12th to file their response. A motion which the Court granted. And as such, I will only have exactly 14 days afterwards to not only have my petition filed. But i will have to have it to the court.

Because mail from the Supreme court and that from the Government isn't classified as legal mail, it takes longer to get to me. Whereas legal mail gets to you the day it arrives. But, I've asked that i be allowed to simply go out to the computer, check the docket to see if the government's response is turned in, and if so make a copy of it on the computer, (which i pay for), then be able to do the research i need. Taking time in the cell to draft the response, and then later be given access to the typewriter to type my petition, make a copy, and submitted it to the court.

In the past, when there were 3 executions, the past Warden would allow the unit to function. Which included us to be able to have access to the Law Library. Being that simply because some inmates might have execution dates. Others with pending litigation need the law library to ensure they wouldn't be next.

## II. EXTRAORDINARY CIRCUMSTANCES

The Supreme court, in In re davis, 557 u.s. 952, 953 (2009), stated that "the substantial risk of putting an innocent man to death . . . is sufficiently 'exceptional' to warrant utlization of th[e] Court's  . . . original habeas jurisdiction." (emphasis added). Where in the present case, I would present to the court, DNA results (exhibit A), Gasoline results (exhibit B), and even transcripts from an alibi witness (exhibit C). all evidence that was never presented at my trial. But evidence that I've used to show that my case is extraordinary. Thus, asking this court to see that without being able to properly, and thoroughly research the law, present the law, and possibly win an appeal where this might be my last chance to do so, would be a miscarriage of justice.

Because of the time needed before the filing date. i ask this court, if it deems my request is warranted, that it contact the prison as soon as possible to notify them of the order. If granted.

respectfully submitted,

Billie Allen 26901-044
p.o. bOX 33
terre haute, IN.
47808

12/ 5 /19

**U.S. Department of Justice**

Office of the Solicitor General

_____

The Solicitor General                                        *Washington, D.C. 20530*


October 30, 2019


Honorable Scott S. Harris
Clerk
Supreme Court of the United States
Washington, D.C. 20543

         In re Billie J. Allen,
        <u>No. 18-9554 (Capital case)</u>

Dear Mr. Harris:

     The petition for a writ of certiorari in the above-captioned case was filed on May 24, 2019, and placed on the Court's docket on June 5, 2019. The government's response is currently due, on four extensions, on November 4, 2019.

     We respectfully request, under Rule 30.4 of the Rules of this Court, a further extension to and including December 12, 2019, within which to file the government's response. This extension is necessary because the attorneys with principal responsibility for final preparation of the government's response have been heavily engaged with the press of other matters before the Court.

     Because petitioner is an incarcerated federal prisoner proceeding pro se, we have not obtained his consent to this request.

                              Sincerely,


                              Noel J. Francisco
                              Solicitor General


cc:    See Attached Service List

METROPOLITAN POLICE DEPARTMENT - CITY OF ST. LOUIS

LABORATORY REPORT

RE: Richard HEFLIN
6900 Clayton          :VICTIM

Norris HOLDER
5607 Curry           :SUSPECT

Billy ALLEN
3164 Oregon          :SUSPECT

HOMICIDE/BANK ROBBERY,
3-17-97

COMPLAINT NO.: 97-3 4 2 8 4

DATE RECEIVED: 3-17/3-18 & 3-19-97

DATE EXAMINED: 4-3-97

LABORATORY NO.: 7 0 3 3 6 0

EXAMINER: JOSEPH STEVENS

EXAMINED FOR: Homicide Section
Det. Nickerson

REPORT

SPECIMENS:

*52A*

Q-1. Metal can containing one damp rag.
Q-2. One metal can containing carpet and debris from behind passenger seat of van. *52B*
Q-3. Paper evidence bag containing clothing of suspect Allen consisting of:  a) gray sweatpants, b) blue sweatpants, c) black, red and white pullover shirt.    *No gas*
Q-4. Paper evidence bag containing clothing of suspect Norris consisting of:  a) blue coveralls, b) blue and red "Nautica" shirt, c) blue jeans; d) white "bullet proof" vest.
Q-5. Paper evidence bag containing one black leather jacket recovered from front seat of vehicle.
Q-6. Paper evidence bag containing plastic bag containing one pair of very wet leather gloves.

RESULTS OF EXAMINATION:

Q-1. Gas chromatographic analysis of the head space of Specimen Q-1 failed to disclose the presence of any petroleum distillates.

Q-2. Gas chromatographic analysis of the head space of Specimen Q-2 disclosed the presence of gasoline.

Q-3 through Q-6.  Specimens Q-3 through Q-6 were repackaged by heat sealing in Kapak bags.

Subsequent gas chromatographic analysis of the head spaces inside these Kapak bags disclosed the following:

Q-3.  No petroleum distillates were detected.

Q-4.  Gasoline detected

Q-5.  Gasoline detected

Q-6.  Gasoline detected

0000157

LABORATORY REPORT

RE: Richard HEFLIN, JR.        :VICTIM
    204 Sandra Dr.

    Norris HOLDER          :SUSPECTS
    5607 Curry

    Billy ALLEN

    FATAL SHOOTING,
    3-17-97

COMPLAINT NO.:   97-3 4 2 8 4

REQUEST REC'D:   3-18-97

REPORT DATE:     6-5-97

LABORATORY NO.:  7 0 3 3 6 0

EXAMINER:        DONNA BECHERER

EXAMINED FOR:    Homicide Section
                 Det. Toretta
                 U.S. Attorney
                 Joe Landolt

REPORT

SPECIMENS:

    Q-4.    Blood from white strap
    K-1.    Blood of Richard Heflin, Jr.
    K-2.    Blood of Billie Allen

RESULTS OF EXAMINATION:

Deoxyribonucleic acid (DNA) profiles from genetic loci D1S7, D2S44, D4S139, D5S110, D10S28 and D17S79 were developed from HaeIII-digested high molecular weight DNA extracted from the above-listed specimens. Based on these results, the DNA detected in the Q-4 white strap stain does not match the DNA of Richard Heflin or Billie Allen, and could not have been contributed by either of these individuals.

CHAIN OF CUSTODY

Priest          to      Vincent     to.    Owens       to    Becherer
Q-4                     3-17-97            3-17-97            3-21-97

Graham     to    Barry      to    Karr     to    Owens      to    Becherer
K-1              3-18-97          3-18-97         3-18-97          3-21-97

Crow             to               Becherer
K-2    3-18-97                     3-21-97

                        EXAMINER: _____
                                  Donna Becherer
                                  Criminalist
                        EXAMINER: _____
                                  Kim Gorman
                                  Criminalist

eas

0001266

No. 4:07-CV-27-ERW
Exhibit 4

FD-302a (Rev. 10-6-95)

# Alibi

91A-SL-181120

Continuation of FD-302 of ~~P. Swenson / Brian / Christopher Chappog~~ , On 02/02/1998 , Page    19

~~███~~:           Uh...east St. Louis.

Swenson:       East St. Louis?

~~███~~:           Yeah.

Swenson:       You recall what time you left home that day?

~~███~~:           I leave...say about...about nine-thirty, something like that... yeah about nine-thirty.

Swenson:       Did ya, did ya have any other stops before you went?

~~███~~:           Uhhhhh.....no.   Nope.

Swenson:       Had, had you been at the mall awile before you saw him?

~~███~~:           I walked in, when I walked in he was with a group there, right there.

Swenson:       Okay, but it doesn't take you that long if you left your, your house at nine-thirty, it doesn't take you that long to drive over to Northwest Plaza though does it?

~~███~~:           It takes me about thirty, forty, thirty, forty minutes, depends on, ya know, where you staying in St. Louis.

Swenson:       Right.  So you think it takes about forty

0002192

File: No. 4:07-CV-27-ERW
Exhibit 4

FD-302a (Rev. 10-6-95)

91A-SL-181120

Continuation of FD-302 of  ~~P. Swenson/D. Rico/Christopher Shegog~~ , On  02/02/1998  , Page _____20_____

~~Shegog~~:      minutes or so from your house, thirty to forty minutes?  Okay.  But you don't think there's anyway you saw him before eleven?

~~Shegog~~:      Uh hmmm, uh hmmm.

Swenson:      When you left you went to, you drove him to his girlfriend's house somewhere off of Bermuda.

~~Shegog~~:      Uh hmmm.

Swenson:      How close to the highway was that?

~~Shegog~~:      Right off the highway.

Swenson:      Right off the highway.  You recall her name?

~~Shegog~~:      He didn't never tell me her name.

Swenson:      Never told ya?  Okay, so you...

~~Shegog~~:      He uh, I guess he had two girlfriends, I don't know, there was one at Bermuda ...(UI)...and the one...the house he was over with.

Swenson:      Oh, okay.

~~Shegog~~:      So, I know they weren't the same girl.

Swenson:      Had, had you met these girls before.  Did you know anything about them?

~~Shegog~~:      I hadn't seen Billy in a long time.

0002193